IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

LISA KELLY,

    Plaintiff,

    v.                                    Civil Action No. RDB-18-2090

EMERGE, INC.,

    Defendant.

\* \* \* \* \* \* \* \* \* \* \* \* \*

**<u>MEMORANDUM OPINION</u>**

Plaintiff Lisa Kelly ("Plaintiff" or "Kelly") has filed this two-count complaint against Defendant Emerge, Inc. ("Defendant" or "Emege"). She alleges violations of the Fair Labor Standards Act, 29 U.S.C. § 200, *et seq.* ("FLSA") (Count I) and wrongful discharge under Maryland law (Count II). Currently pending is Defendant's Motion to Dismiss (ECF No. 5.) The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2016). For the reasons that follow, Defendant Emerge, Inc's Motion to Dismiss (ECF No. 5) is DENIED.

<u>BACKGROUND</u>

This Court accepts as true the facts alleged in the plaintiffs' complaint. *See Aziz v. Alcolac, Inc.*, 658 F.3d 388, 390 (4th Cir. 2011). Lisa Kelly worked as a Residential Counselor for Emerge, Inc., which provides residential and daycare services for adults with developmental, physical, and mental health disabilities. (Compl. ¶¶ 7-8, ECF No. 1.) Her job required her to assist residents with daily tasks, perform housekeeping services, ensure that residents took medications, escort residents to appointments and on vacations, and

1

write reports for the use of medical professionals. (*Id.* at ¶ 13.)

Kelly regularly worked between 80 and 144 hours per week. (*Id.* at ¶ 15.) She received hourly rates of pay ranging from $10.81 to $23.36 depending on the type of work she performed. (*Id.* at ¶ 16.) Although her rates of pay fluctuated, these pay rates did not change based on the number of hours she worked. (*Id.* at ¶ 18.) Moreover, despite regularly working over forty hours per week, she did not receive an overtime premium for hours worked over and above forty hours. (*Id.* at ¶ 17.) In total, Plaintiff was underpaid at least $27,000 in unpaid overtime pay. (*Id.* at ¶ 33.)

On Sunday, August 27, 2017, two residents under her supervision engaged in a physical altercation. (*Id.* at ¶ 19.) Because the facility did not have a working telephone, Plaintiff permitted one of the residents to contact the police and report the altercation. (*Id.* at ¶ 20.) After police arrived, the resident who instigated the first encounter attempted to start a second altercation with another resident. (*Id.* at ¶ 22.) Afterward, Kelly followed company protocol by preparing a written report for Emerge to facilitate its own report to a state or local agency. (*Id.* at ¶ 37.) She also notified her supervisor and a director about the situation. (*Id.* at ¶ 37.) On the very next day, Kelly was placed on unpaid administrative leave; shortly thereafter, Emerge terminated her employment. (*Id.* at ¶¶ 24-25.) Kelly then filed this two-count complaint against Emerge. Defendant has moved to dismiss the Complaint.

STANDARD OF REVIEW

Rule 8(a)(2) of the Federal Rules of Civil Procedure provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to

relief." Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted. The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). The United States Supreme Court's opinions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009), "require that complaints in civil actions be alleged with greater specificity than previously was required." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted). In *Twombly*, the Supreme Court articulated "[t]wo working principles" that courts must employ when ruling on Rule 12(b)(6) motions to dismiss. *Iqbal*, 556 U.S. at 678. First, while a court must accept as true all factual allegations contained in the complaint, legal conclusions drawn from those facts are not afforded such deference. *Id.* (stating that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *see also Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012) ("Although we are constrained to take the facts in the light most favorable to the plaintiff, we need not accept legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." (internal quotation marks omitted)). Second, a complaint must be dismissed if it does not allege "a plausible claim for relief." *Iqbal*, 556 U.S. at 679.

## ANALYSIS

**I.      Plaintiff has sufficiently alleged FLSA violations (Count I).**

Emerge contends that Kelly has failed to adequately plead FLSA violations. It argues that Kelly has merely parroted the FLSA statute without providing "any facts or allegations to support her assertion that she is owed overtime." (Def.'s Mot. 3, ECF No. 5.) Specifically, Defendant faults Plaintiff for failing to provide adequate information about the type of work she performed and how her worked corresponded to her fluctuating rates of pay. (*Id.* at 4.)

The FLSA "establishes a minimum wage and overtime compensation for each hour worked in excess of 40 hours in each workweek for many employees." *Perez v. Mortg. Bankers Ass'n*, ––– U.S. ––––, 135 S.Ct. 1199, 1204, 191 L.Ed.2d 186 (2015) (citation and internal quotation marks omitted). Overtime compensation must be paid "at a rate not less than one and one-half times" the employee's regular rate. 29 U.S.C. § 207. In *Hall v. DIRECTV*, 846 F.3d 757 (4th Cir. 2017), the United States Court of Appeals for the Fourth Circuit articulated the requirements for properly alleging an FLSA violation. Rejecting the rule of some district courts which required plaintiffs to provide an approximation of the number of hours for which they were inadequately compensated, the Court adopted "a more lenient approach" which merely requires the Plaintiff to "provide sufficient factual allegations to support a reasonable inference that he or she worked more than forty hours in at least one workweek and that his or her employer failed to pay the requisite overtime premium for those overtime hours." *Hall*, 846 F.3d at 776-77. A plaintiff may satisfy this standard by proffering any set of facts to permit the Court to find her pleadings plausible, including an estimated length of time of her average workweek during the applicable period, information about her average pay rate, and the like. *Id.* at 777; *see also Ridenour v. B&H New & Used Auto*

*Parts, Inc.*, ELH-17-763, 2017 WL 6206045, at *4 (D. Md. Dec. 8, 2017) (denying a motion to dismiss after applying the pleading requirements described in *Hall*).

In *Ridenour*, plaintiff alleged that he typically worked Monday through Friday for nine hours per day. *Id.* His Complaint explained that his employer paid him at a rate of $1,000 per week and then later at a rate of $1,350 per week. *Id.* Nevertheless, his employer did not pay him for the work he performed beyond forty hours per week. *Id.* The Court found these factual allegations sufficient to permit the Court to find the alleged FLSA violations plausible according to the standard articulated in *Hall*. *Id.*; *see also Allen v. Express Courier International, Inc.*, 3:18-cv-00028-MOC-DSC, 2018 WL 3577263, at *2 (W.D.N.C. July 25, 2018) (determining that plaintiffs met the pleading standard as articulated in *Hall* by claiming that they worked "more than forty hours per week, that defendants knew of these hours, yet failed to pay plaintiffs overtime wages, and that plaintiffs' vehicle expenses caused their pay to drop below minimum wage"); *Ra'Palo v. Lucas Designs Inc.*, 9:17-cv-00710-DCN, 2017 WL 3118057, at *3 (D.S.C. July 21, 2017) (finding FLSA violations plausible in light of Plaintiffs' claim that they worked "six days a week and 'sometimes' worked as much as 12 hours a day'" without overtime compensation).

Plaintiff's Complaint provides sufficient factual details to satisfy *Hall*'s lenient standard. It provides, just as in *Ridenour*, information about her hourly rates of pay: they ranged from $10.81 to $23.36 depending on the type of work performed. (Compl. ¶ 16.) As in *Ridenour*, the Complaint gives an estimate about the average length of Kelly's work week: between 80 and 144 hours per week. (*Id.* at ¶ 15.) The Complaint also explains the sort of work that Kelly performed, which renders plausible her alleged exceptionally long work

weeks: she provided residential care to adults with developmental, physical, and health disabilities, including assisting them with daily tasks, rendering housekeeping services, managing their medication regimen, escorting them to appointments and on vacations, and writing reports for medical professionals. (*Id.* at ¶ 13.) Finally, the Complaint alleges in a general way—as the *Ridenour* Court found acceptable—that Lucy never received overtime pay when she worked beyond forty hours per week. (*Id.* at ¶ 17.) In sum, the Complaint provides all the factual material that *Hall*, and the cases applying it, requires. Plaintiff need not provide a more exact account of how she spent her hours and how her pay corresponded to the various tasks she performed, as Defendant demands. Accordingly, Defendant's request to dismiss Plaintiff's FLSA claims is denied.

## II. Plaintiff has sufficiently alleged wrongful termination (Count II).

Plaintiff alleges that she has suffered wrongful termination for engaging in the protected activity of reporting suspected criminal activity to the police and for making a mandatory report of abuse of an alleged vulnerable adult pursuant to Md. Code Ann., Fam. Law § 14-302. (Compl. at ¶¶ 36-43.) Defendant argues that Plaintiff has failed to allege wrongful termination because she did not engage in protected activity. Specifically, Defendant argues that Kelly did not report criminal activity to police because the Complaint alleges that she never called the police—instead, she allowed a third party to do so. (Def.'s Mot. 6.) Moreover, Kelly did not engage in protected activities as a mandatory reporter because she reported the incident to her supervisor and another eMerge director, rather than to the head of the institution as Maryland law requires. (*Id.* at 7.)

It is well established in Maryland that "at-will employment 'can be legally terminated at the pleasure of either party at any time.'" *Makovi v. Sherwin–Williams Co.*, 316 Md. 603, 609, 561 A.2d 179, 182 (1989) (citation omitted). Maryland law recognizes wrongful termination, or wrongful discharge, as a common law exception to the at-will doctrine. The Maryland Court of Appeals has held that "to establish wrongful discharge, [1] the employee must be discharged, [2] the basis for the employee's discharge must violate some clear mandate of public policy, and [3] there must be a nexus between the employee's conduct and the employer's decision to fire the employee." *Wholey v. Sears Roebuck*, 370 Md. 38, 50–51, 803 A.2d 482, 489 (2002). Plaintiff argues that her employment termination violated two clear public policy mandates: (1) a policy of protecting the rights of citizens who report suspected criminal activity to the appropriate authorities, as articulated in *Wholey*; and (2) a policy of encouraging reports of suspected abuse or neglect of vulnerable adults, as human service workers must do pursuant to Md. Code Ann., Fam. Law § 14-101. (Pl.'s Resp. 7-8, ECF No. 6.)

To satisfy her burden of identifying a clear public policy violation, Plaintiff "must demonstrate the policy in question with clarity, specificity and authority." *Bagwell v. Peninsula Reg'l Med. Ctr.*, 665 A.2d 297, 309 (Md. Ct. Spec. App. 1995). Maryland statutes, prior judicial decisions, and administrative regulations provide the clearest evidence of the state's public policies. *Szaller v. Am. Nat. Red Cross*, 293 F.3d 148, 151 (4th Cir. 2002) (*citing Adler v. Am. Standard Corp.*, 291 Md. 31, 432 A.2d 464, 472 (1981). Maryland's highest court has determined that the State has a "clearly definable public policy goal" of "protect[ing] witnesses who report suspected criminal activity to the appropriate law enforcement or

judicial authority." *Wholey*, 803 A.2d at 495. Moreover, Md. Code Ann., Fam. Law § 14-101 embodies a clear Maryland public policy of protecting the health and safety of adults with physical and mental disabilities. *Cf. Bleich v. Florence Crittenton Serv.*, 98 Md. App. 123, 131, 138-40, 632 A.2d 463, 467, 470-71 (Md. Ct. Spec. App. Ct. 1993) (finding a public policy of protecting children in residential care based on a similar statute).

Emerge maintains that her claim fails as a matter of law because she did not personally contact police to report suspected criminal activities and she did not perfectly follow the reporting procedures outlined in Section 14-302 (Def.'s Mot. 6-7.) To adequately state a wrongful discharge claim arising from reports of unlawful activity, Plaintiff must allege that she reported the activity to the appropriate authority rather than "merely investigate suspected wrong-doing and discuss that investigation with co-employees or supervisors." *Wholey*, 803 A.2d at 496. Employees, however, need not perfectly exercise their rights or flawlessly execute their duties to adequately plead a wrongful termination claim. *See Bleich*, 632 A.2d at 470-1 (explaining that it would be "extremely shortsighted" to reject Plaintiff's wrongful termination claim merely because she did not allege that she made an oral report of child abuse or neglect or include certain items in her written report as required by statute).

It would likewise be inappropriate to dismiss Plaintiff's wrongful termination claim at this stage merely because Plaintiff did not perfectly execute her legal rights. Plaintiff alleges that she "contacted law enforcement" by "permit[ing] one of the residents to contact police" regarding a physical altercation between two residents. (Compl. ¶¶ 20, 41.) Her decision to facilitate a call to police to report suspected criminal activity, as opposed to dialing 9-1-1

8

herself, does not negate her wrongful discharge claim. To dismiss her claim on this basis alone would run afoul of *Bleich*, which counsels against requiring Plaintiffs to flawlessly report suspected unlawful activity.[1]

Finally, Defendant argues that Plaintiff has failed to establish a nexus between her conduct and Emerge's decision to terminate her employment. (Def.'s Mot. 8.) Among other circumstances, a short length of time between a protected activity and an adverse employment action provides strong evidence of a nexus between the two events. *Smith v. Washington Suburban Sanitary Com'n*, DKC-12-0316, 2012 WL 4863399, at *5-6 (D. Md. Oct. 11, 2012) (*quoting Price v. Thompson*, 380 F.3d 209, 213 (4th Cir. 2004). In this case, Plaintiff alleges that she reported a physical altercation between residents on August 27, 2017 and that her employment was terminated the next day. (Compl. ¶¶ 19, 24-25.) During an employment hearing, an Emerge representative stated that Plaintiff was terminated because of the way she handled the altercations. (Compl. ¶ 26.) These allegations suffice to establish a nexus at this stage.

## CONCLUSION

For the reasons stated above, Defendant Emerge, Inc's Motion to Dismiss (ECF No. 5) is DENIED.

A separate Order follows.

Dated: October 10, 2018             ____/s/_____
                                                                   Richard D. Bennett
                                                                    United States District Judge

---

[1] Plaintiff's alternative basis for supporting a wrongful termination claim—that she filed an internal report concerning the altercation—appears questionable. *See Wholey*, 803 A.2d at 496-97 ("To qualify for the public policy exception to at-will employment, the employee must report the suspected criminal activity to the appropriate law enforcement or judicial official, not merely investigate suspected wrong-doing and discuss that investigation with co-employees or supervisors.").